**SO ORDERED.**

**SIGNED this 30th day of June, 2017.**



*Janice Miller Karlin*
Janice Miller Karlin
United States Chief Bankruptcy Judge

___

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **In re:** | Case No. 16-40826 |
| **John Stanley Hayworth, Jr.** | Chapter 7 |
| **Bernadine Andrea Hayworth,** | |
| **Debtors.** | |
| **William Schoonover,** | |
| Plaintiff, | Case No. 16-7049 |
| v. | Adversary Proceeding |
| **John Stanley Hayworth, Jr. and** | |
| **Bernadine Andrea Hayworth,** | |
| Defendants. | |

### Memorandum Opinion and Order Granting
### Plaintiff's Motion for Summary Judgment

This adversary proceeding involves a story line that could be lifted from a western movie set in Kansas' storied wild west; unfortunately, the facts and players are real, resulting in this second lawsuit between the parties. In state court,

Plaintiff William Schoonover successfully sued Defendants/Debtors John and Bernadine Hayworth for battery, stemming from an altercation over the Hayworths' grazing cattle on Schoonover's land. That dispute escalated, resulting in Mr. Hayworth shooting Schoonover in the chest and Ms. Hayworth repeatedly kicking Schoonover. He now seeks to except that judgment from the Hayworths' Chapter 7 bankruptcy discharge, under 11 U.S.C. § 523(a)(6) (debts for "willful and malicious injury"),[1] based on the principle of collateral estoppel.

Schoonover has filed a summary judgment motion, claiming that all elements of collateral estoppel are present. In support, he has provided the pertinent portions of the state court record. Because all elements of collateral estoppel are present, the Court grants Schoonover's motion for summary judgment,[2] holding that the debt the Hayworths owe Schoonover is not discharged pursuant to § 523(a)(6).

I.  **Findings of Fact**

Schoonover has established the following uncontroverted facts. In 2012, Schoonover sued the Hayworths in state court. His petition generally alleged that Mr. Hayworth intentionally shot Schoonover and that Ms. Hayworth intentionally injured Schoonover by repeatedly kicking him, causing severe and permanent injuries. The parties' altercation was apparently the latest in a long-standing dispute between these rural neighbors over fencing and cattle.

---

[1] All future statutory references are to the Bankruptcy Code, title 11 of the United States Code, unless otherwise specified.

[2] Doc. 28.

Schoonover's petition stated two counts. The first count alleged that Mr. Hayworth committed a battery upon Schoonover "by intentionally causing great bodily harm to Schoonover as a result of shooting Schoonover with [Mr. Hayworth's] firearm."[3] Schoonover specifically alleged that Mr. Hayworth "acted with intent to injure."[4] The second count made similar allegations against Ms. Hayworth; it alleges that she "committed a battery upon Schoonover by intentionally causing bodily harm and disfigurement to Schoonover" by "repeatedly kicking Schoonover's head, chest and body" with "intent to injure."[5] Both counts also alleged that as the result of the intentional conduct by the Hayworths, Schoonover was damaged and that his injuries "were directly and proximately caused by the intentional acts" of the Hayworths.[6] Schoonover sought money damages exceeding $75,000.

Ultimately, the state court entered a pretrial order that expressly identified whether a battery was committed against Schoonover as an issue to be determined by the factfinder.[7] While other issues of fact are noted, battery is the only cause of action preserved for trial. The pretrial order also reflected the Hayworths' defenses

---

[3] Doc. 29 Exh. E at p.3.

[4] *Id.*

[5] *Id.* at p.4.

[6] *Id.* at p.3–4.

[7] Doc. 29 Exh. F.

and issues of fact; one identified is whether it was reasonable and appropriate for Mr. Hayworth to use the force he used under the circumstances.

A jury heard the evidence at a trial in December 2015. The jury received instructions indicating that Schoonover complained he was injured due to battery by the Hayworths, and those instructions defined battery as "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact that is harmful or offensive."[8] The Hayworths make much of the fact that the jury instructions later define "trespasser," as well, and that is correct; but the instructions do not state trespass as a cause of action or allege any injury therefrom and Schoonover never made a trespass claim in his petition or pretrial order.[9]

The jury instructions also instruct as to the Hayworths' defenses; those defenses included Mr. Hayworth's belief that he acted in self-defense and that he acted reasonably based on his belief that his life was in danger. Those defenses also included that Ms. Hayworth denied completely that she committed any battery on Schoonover.

---

[8] Doc. 29 Exh. G p.7.

[9] The state court petition contained only two counts, both alleging battery. The pretrial order also states only one cause of action: for battery. The jury instructions include a statement of contentions, which include Schoonover's contention that he was injured by battery—with no mention of trespass. Further, the jury instructions demonstrate that the issue of whether the Hayworths were trespassers was only relevant to the Hayworths' affirmative defenses of self-defense and immunity to the *battery* claim, defenses the jury clearly rejected. The Hayworths' allegation that trespass *could* have been a cause of action charged to the jury is thus simply unfounded based on the uncontroverted evidence.

Finally, as relevant here, the jury instructions include an instruction on damages, instructing that if the jury found Schoonover "suffered an injury or injuries and more than minimal discomfort as a result of the occurrence," then they "must compensate" Schoonover.[10] Ultimately, the jury reached a verdict for Schoonover against both the Hayworths, specifically assessing $260,000 in damages against Mr. Hayworth (consisting of $67,500 in noneconomic loss, $142,306.74 in future economic loss, and $50,193.26 in medical expenses) and $10,000 in damages against Ms. Hayworth.

The state court entered judgment in January 2016, and the Hayworths did not appeal or file any post-trial motion. When Schoonover initiated collection efforts, the Hayworths filed their Chapter 7 bankruptcy petition.

In response to Schoonover's motion for summary judgment, Mr. Hayworth alleges additional facts and filed an affidavit in support of the response.[11] It essentially states that he did not desire to cause his gun to discharge, and that the discharge of the gun was the inadvertent result of Schoonover charging him. He further states he did not intend to harm Schoonover. Mr. Hayworth also alleges he has been a paramedic and administrator of an ambulance company for his professional career, and that after his gun inadvertently discharged and he realized Schoonover was injured, he "applied [his] skills to saving [Schoonover's] life and

---

[10] Doc. 29 Exh. G p.14.

[11] Ms. Hayworth provided no affidavit, so there is no evidence in the summary judgment briefing refuting Schoonover's contentions about her actions.

preventing any further injury which would have resulted but for the life-saving procedures [he] administered."[12]

The Court notes that the statements contained in Mr. Hayworth's affidavit are in direct conflict with the Hayworths' position in the state court pretrial order—a pretrial order that reflects all parties were represented by counsel. There, Mr. Hayworth affirmatively pleaded that he shot Schoonover to stop Schoonover from attacking him (i.e., admitting to an intentional act, not inadvertent). The state court pretrial order also states that Mr. Hayworth's position (at that time) was that he reasonably believed his use of force against Schoonover "was necessary to prevent imminent death or great bodily harm to himself or his wife"[13]—again, that Mr. Hayworth intended to shoot Schoonover, but in self-defense.

The jury instructions reflect the same, and nowhere does the Court see a mention in the state court documents that the gunshot was "inadvertent." Significantly, in responding to the summary judgment motion, the Hayworths did not controvert the authenticity or content of the state court documents setting out these facts.

---

[12] Doc. 30 p.6.

[13] Doc. 29 Exh. F p.6.

## II. Conclusions of Law

The parties stipulate to this Court's jurisdiction over them and this matter, and consent to the entry of a final order by this Court.[14] An adversary proceeding to determine the dischargeability of particular debts is a core proceeding under 28 U.S.C. § 157(b)(2)(I), over which this Court may exercise subject matter jurisdiction.[15]

### A. Legal Standard for Assessing a Motion for Summary Judgment

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] An issue is 'genuine' if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[17] 'Material facts' are those that are "essential to the proper disposition of [a] claim" under applicable law.[18] When analyzing

---

[14] Doc. 26 p.3 (pretrial order).

[15] 28 U.S.C. § 157(b)(1) and § 1334(b).

[16] Fed. R. Civ. P. 56. Rule 56 is incorporated and applied in bankruptcy courts via Federal Rule of Bankruptcy Procedure 7056.

[17] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[18] *Id.*

summary judgment, the Court draws all reasonable inferences in favor of the non-moving party.[19]

The party moving for summary judgment bears the initial burden of demonstrating—by reference to pleadings, depositions, answers to interrogatories, admissions, or affidavits—the absence of genuine issues of material fact and entitlement to judgment as a matter of law.[20] If the movant carries this initial burden, the nonmovant must "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[21] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[22] Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[23]

The Hayworths filed an opposition brief to Schoonover's motion for summary judgment, agreeing that most facts were uncontroverted but adding additional

---

[19] *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[21] *Thom*, 353 F.3d at 851 (citing Federal Rule of Civil Procedure 56).

[22] *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002) (internal quotations omitted).

[23] *Celotex Corp.*, 477 U. S. at 327

-8-

references to the pretrial order, jury instructions, and Mr. Hayworth's affidavit, all reflected above. The Court has noted above the established facts, and will focus its analysis on the sole issue of whether the uncontroverted facts entitle Schoonover to judgment as a matter of law.[24]

B. **Plaintiff's § 523(a)(6) Claim**

Although a Chapter 7 discharge is generally designed to be a relatively quick method of discharging debts and providing debtors a fresh start, there are certain debts that are not dischargeable. Under § 523(a)(6), a Chapter 7 discharge does not discharge debts for "willful and malicious injury by the debtor to another." "A wrongful act done intentionally, which necessarily produces harm or that has a substantial certainty of causing harm, and is without just cause or excuse, is 'willful and malicious' within the meaning of § 523(a)(6)."[25] A reckless or negligently inflicted injury does "not fall within the compass of § 523(a)(6)."[26]

---

[24] *See ReVest, LLC v. Long (In re Long)*, No. 09-12827, 2011 WL 976460, at *1 (Bankr. D. Kan. Mar. 1, 2011) ("Once the Court determines which facts are not in dispute, it must then determine whether those uncontroverted facts establish a sufficient legal basis upon which to grant movant judgment as a matter of law.") (citing *E.E.O.C. v. Lady Baltimore Foods*, 643 F. Supp. at 407).
  Both parties mention an issue that was not briefed, and is not a basis for Schoonover's motion for summary judgment—namely, whether the parties agreed to settle their dispute with a nondischargeability judgment in the Hayworths' bankruptcy case. Because Schoonover does not move for summary judgment based on this alleged potential settlement, the Court will not address it further.

[25] *Exchange State Bank v. Murphy (In re Murphy)*, No. 08-41222, Adv. No. 08-7076, 2009 WL 3185488, at *7 (Bankr. D. Kan. Sept. 29, 2009).

[26] *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).

For an injury to be willful, "a creditor must demonstrate that the debtor intended not only to commit the act that caused the damage, but must also intend its consequences."[27] For an injury to be malicious, there must be "an intentional act[that is] performed without justification or excuse."[28] Without proof of both willful and malicious injury, an objection to discharge under section 523(a)(6) must fail.[29]

"Discharge provisions are strictly construed against the objecting creditor and, because of the fresh start objectives of bankruptcy, doubt is to be resolved in favor of debtors."[30] But section 523(a)(6) "reflects the policy consideration that certain conduct is so socially reprehensible that the resulting indebtedness is not worthy of discharge."[31] "The burden of proof [on a § 523(a)(6) claim] rests with the

---

[27] *Kansas v. Van Horn (In re Van Horn)*, No. 11-10352, 2012 WL 2476415, at *2 (Bankr. D. Kan. June 26, 2012); *see also Panalis v Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (holding that § 523(a)(6) applies only to "acts done with the actual intent to cause injury").

[28] *Tso v. Nevarez (In re Nevarez)*, 415 B.R. 540, 544 (Bankr. D.N.M. 2009); *In re Moore*, 357 F.3d at 1129 (citing 11th Circuit case with approval that held "the term 'malicious' requires proof 'that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause injury").

[29] *In re Moore*, 357 F.3d at 1129.

[30] *Reynolds v. Phillips (In re Phillips)*, No. 08-40435, Adv. No. 08-7046, 2009 WL 1941307, at *3 (Bankr. D. Kan. July 2, 2009); *see also Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997) (stating that exceptions to discharge are to be narrowly construed and "because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor").

[31] *Id.*

-10-

party opposing discharge," by a preponderance of the evidence.[32] Schoonover, therefore, as the movant and the party with the burden of proof at trial on his dischargeability claim, "has the initial burden of production to establish the essential elements" of his claim "and the absence of a genuine dispute of material fact."[33]

Schoonover seeks summary judgment on the basis that the state court judgment against the Hayworths should be given preclusive effect on his § 523(a)(6) claim, through collateral estoppel. "Collateral estoppel principles apply in bankruptcy cases and can be used in nondischargeability actions to prevent re-litigation of issues already decided."[34] "When the issue previously litigated was litigated under state law, a bankruptcy court will apply the law of collateral estoppel of the relevant state."[35]

Under Kansas law, collateral estoppel applies when the movant shows:

> 1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, 2) the parties must be the same

---

[32] *Id.*; *see also Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 655 (10th Cir. BAP 1999) (stating that a party opposing the discharge of debt has the burden of proof by a preponderance of the evidence).

[33] *Kansas v. Van Horn (In re Van Horn)*, No. 11-10352, 2012 WL 2476415, at *2 (Bankr. D. Kan. June 26, 2012).

[34] 4 *Collier on Bankruptcy* ¶ 523.06 at 523-22 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)).

[35] *Id.*

-11-

or in privity, and 3) the issue litigated must have been determined and necessary to support the judgment.[36]

Schoonover alleges his state court judgment is based solely upon the civil tort of battery, that the parties are identical, and that the willful and malicious elements of his § 523(a)(6) claim are established by the civil judgment for battery.

The first and second elements of collateral estoppel are satisfied based on the uncontroverted facts and record supporting Schoonover's motion for summary judgment. The parties are the same: Schoonover and the Hayworths were the only parties in the state court litigation and are the only parties in this adversary proceeding herein. The parties fully litigated the issue of Schoonover's civil tort claim for battery, all with assistance of counsel. At the conclusion of a full trial, the state court entered a jury verdict for Schoonover on the merits. The judgment that resulted is final.

Only the third element of collateral estoppel—whether the issue litigated was necessary to support the judgment—is really disputed here. The civil tort of battery in Kansas is well defined: it is "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive."[37] The Kansas Supreme Court has stated that the gravamen of this tort is "the actor's intention to inflict injury."[38]

---

[36] *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 884 (10th Cir. BAP 2002) (citing Kansas law).

[37] *Baska v. Scherzer*, 156 P.3d 617, 622 (Kan. 2007).

[38] *Id.*

-12-

"Liabilities arising from . . . battery are generally considered as founded upon a willful and malicious injury and are therefore within the [§ 523(a)(6)] exception," unless liability is "imposed without proof of any element of malice."[39]

The task for this court, therefore, is to determine whether both the willful and malicious elements were necessary to Schoonover's state court judgment. Regarding willfulness, or intent, the Court finds this element easily satisfied. The Hayworths unpersuasively argue that because the judgment from the Kansas state court does not expressly state the grounds for the damages awarded, the judgment cannot be given preclusive effect. But the jury instructions required the jury to award damages if Schoonover was injured from the occurrence between the parties. Schoonover sought damages for battery, the jury instructions specifically defined battery as an intentional act, and that was the only cause of action Schoonover pleaded.

Battery, as defined in the jury instructions, was the only ground upon which any damage award could be based, and after hearing those instructions, the jury awarded him damages. The pretrial order shows that Mr. Hayworth intended to testify that he actually intended to discharge his gun (i.e., the act) and intended to shoot Schoonover (i.e., the consequence of that act). There can be no other conclusion than that the willfulness element found within the Kansas civil tort of intentional battery has been satisfied.

---

[39] 4 *Collier on Bankruptcy* ¶ 523.12[4] at 523-96.

A Kansas jury thus found, in awarding damages, that Schoonover had proved the "willful" element. While Mr. Hayworth's affidavit now attempts to change the facts upon which that state court judgment was rendered—now claiming his shooting of the gun was not, in fact, intentional, but was instead the result of an inadvertent discharge, he is not entitled to a second bite of this apple. If he had wished to rely on this defense at trial instead of the one contained in the final pretrial order, he could have. But it does not change the fact that intent was already clearly established by the state court judgment, and it is that judgment upon which Schoonover is moving for summary judgment. If the Court were to find that collateral estoppel did not apply, then Mr. Hayworth could argue the facts again. Now is not the time.

The Hayworths next argue that neither the petition, pretrial order, or the jury instructions in the state court case allege that the acts of the Hayworths were malicious. The malicious element requires a showing of "an intentional act [that is] performed without justification or excuse."[40] Again, the Court turns both to the definition of battery under Kansas law and to the instructions the jury received.

The definition of battery in Kansas is an "unprivileged," "harmful or offensive" act.[41] The jury was instructed that to find battery, there must be an

---

[40] *Tso v. Nevarez (In re Nevarez)*, 415 B.R. 540, 544 (Bankr. D.N.M. 2009); *In re Moore*, 357 F.3d at 1129 (citing 11th Circuit case with approval that held "the term 'malicious' requires proof 'that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause injury").

[41] *Baska*, 156 P.3d at 622.

-14-

"unprivileged touching," that was "harmful or offensive."[42] The jury was also instructed as to the Hayworths' defenses, including self-defense and that their battery was justified, but because the jury awarded damages to Schoonover, the only possible conclusion is that the jury did not credit these defenses. Thus for the same reasons stated above, the Court finds that the state court judgment for battery satisfied the "malicious" element of § 523(a)(6).

The Hayworths argue that "[t]he best that can be said" from the jury verdict against them is that "the jury found that an act occurred and that [Mr. Schoonver] was injured and that he was to be compensated for those injuries." They rely on *Jenkins v. IBD, Inc.*[43] to claim that the doctrine of collateral estoppel cannot apply when the jury instructions do not include "magic words." But the court in *Jenkins* held only that collateral estoppel could not apply when the jury instructions contained the disjunctive—"willful, malicious, *or* fraudulent conduct," and it is that "*or* fraudulent" portion that concerned the *Jenkins* court.[44] No such disjunctive instruction is present here. The only "act" complained of was battery, and the elements of battery in Kansas contain both a willful and malicious element. The

---

[42] Doc. 29 Exh. G p.7.

[43] 489 B.R. 587 (D. Kan. 2013).

[44] Id. at 601–02.

jury was instructed accordingly. The Court, therefore, must give preclusive effect to that state court judgment.[45]

### III. Conclusion

Schoonover seeks to avoid retrying the same issues based on the same facts between the same parties, and that is exactly what the doctrine of collateral estoppel is designed to do. A jury has already found that Schoonover met his burden to prove the Hayworths battered him, as that term is defined under state law, and to make that finding, the jury necessarily had to assess the "willful and malicious" elements in the 11 U.S.C. § 523(a)(6) claim. The Hayworths are not entitled to relitigate the facts surrounding the unfortunate incident. As a result, Schoonover's motion for summary judgment[46] is granted. The debt the Hayworths owe Schoonover is excepted from their discharge.

**It is so ordered.**

# # #

---

[45] *See, e.g.*, *Bertone v. Wormington (In re Wormington)*, 555 B.R. 794, 800 (Bankr. W.D. Okla. 2016) (criminal conviction for battery given collateral estoppel effect in § 523(a)(6) action when it required a showing of a "knowing and without legal justification" contact); *Polanco v. Roth (In re Roth),* No. 11-34121 MER, 2014 WL 684630, at *5 (Bankr. D. Colo. Feb. 21, 2014) (state court civil judgment for battery given preclusive effect in § 523(a)(6) action); *Torrez v. Rizo (In re Rizo)*, 34 B.R. 886, 887-88 (Bankr. D. Colo. 1983) (state court judgment for assault and battery given preclusive effect in § 523(a)(6) action because state court found intent and no justification); *cf. McCelvey v. Fulgham (In re Fulgham)*, 70 B.R. 168 (Bankr. D.N.M. 1986) (state court judgment for civil battery <u>not</u> given preclusive effect because jury instructions required willful and malicious motivations for punitive damages and punitive damages were not awarded).

[46] Doc. 28.